## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**THE CHARTER OAK FIRE INSURANCE
COMPANY,**
           **Plaintiff,**

    **v.**                                **Case No. 16-C-0281**

**WISCONSIN ELECTRIC POWER COMPANY and
URS CORPORATION,**
               **Defendants.**

---

### DECISION AND ORDER

Plaintiff, The Charter Oak Fire Insurance Company, filed a complaint alleging claims for negligence and breach of contract against Wisconsin Electric Power Company ("WEPCO") and a claim for negligence against URS Corporation. In a prior order, I granted WEPCO's motion to dismiss Charter Oak's claims against it for failure to state a claim upon which relief may be granted. *See* Jan. 13, 2017 Dec. and Order, ECF No. 31. Before me now is Charter Oak's motion for reconsideration of that order. Also before me is URS's own motion to dismiss the claims that Charter Oak alleged against it.

### I.  BACKGROUND

According to the allegations of the amended complaint, Charter Oak issued a property insurance policy to Metropolitan Environmental Services, a company that performs dredging and excavation services. In August 2011, Metropolitan and WEPCO entered into a contract under which Metropolitan agreed to provide dredging services to WEPCO at its Oak Creek power plant. The area to be dredged was located at the bottom of a bluff, between the bluff and the shore of Lake Michigan.

At approximately the same time that Metropolitan was performing its dredging work at the bottom of the bluff, WEPCO and URS were engaged in a separate construction project at the top of the bluff. On the morning of October 31, 2011, Metropolitan had its heavy equipment on site at the bottom of the bluff, near the Lake Michigan shoreline, when a section of the bluff collapsed, resulting in a large quantity of earth sweeping across the dredging area and pushing Metropolitan's heavy equipment into the lake. The bluff collapse did not injure anyone, but it caused significant damage to Metropolitan's equipment.

Charter Oak paid Metropolitan $749,096.82 for the damage to its heavy equipment. Charter Oak now seeks to exercise its subrogation rights and recover its payment to Metropolitan from WEPCO and URS. It alleges that WEPCO and URS were negligent in the performance of the construction work at the top of the bluff, and that such negligence was the cause of the collapse. Charter Oak also alleges that, in the contract between WEPCO and Metropolitan for the dredging work, WEPCO agreed to indemnify Metropolitan for losses caused by WEPCO's own negligence.

In its motion to dismiss the amended complaint, WEPCO argued that several provisions of the contract between it and Metropolitan barred Charter Oak from recovering the payments it made to Metropolitan under its policy.[1] However, in my decision on the motion, I addressed only one of those reasons, which was based on a provision of the contract that I described as a "subrogation waiver." I concluded that WEPCO had shown that this waiver applied and barred all of Charter Oak's claims

_____

[1] Charter Oak attached the contract to its amended complaint, and therefore I may consider the contract without converting the defendants' motions to dismiss into motions for summary judgment. *See, e.g., Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

against it. Charter Oak now contends that this conclusion was erroneous. WEPCO contends that the conclusion was correct, and it also asks me to decide the other issues it raised in its original motion to dismiss. URS, in its motion to dismiss, contends that the subrogation waiver in the contract between Metropolitan and WEPCO also bars Charter Oak's claim against it.

## II. DISCUSSION

### A. Subrogation Waiver

As I explained in my original decision, the contract between WEPCO and Metropolitan contains language requiring Metropolitan to procure certain forms of insurance. *See* Contract at pp. 2–4.[2] The required coverages were for workers compensation and several forms of liability insurance, including Commercial General Liability (CGL) insurance or its "equivalent." *Id.* The contract also required WEPCO to be included as an additional insured under the CGL policy. *Id.* at 3. And the contract contained the following subrogation waiver, on which I relied in my original decision:

> [Metropolitan] waives the right of subrogation, and waives all rights against [WEPCO] and its agents, officers, directors and employees for recovery of damages to the extent these damages are covered by any of the insurance required above.

*Id.*

WEPCO argued in its original motion that, given Metropolitan's waiver of the right of subrogation, Charter Oak cannot now step into Metropolitan's shoes and attempt to assert any rights against WEPCO that Metropolitan would have had under contract or tort law. *See* Br. at 11–14, ECF No. 17. WEPCO, in its opening brief, anticipated that

---

[2] The contract between WEPCO and Metropolitan is attached as Exhibit A to the amended complaint, ECF No. 14-1. In this opinion, citations to the "Contract" are to this document.

Charter Oak would argue that the subrogation waiver did not apply because it paid Metropolitan under a policy of property insurance, which is a form of coverage that the contract did not expressly require Metropolitan to procure. WEPCO then made three counterarguments. First, it argued that property insurance is the "equivalent" to the forms of insurance required under the contract and therefore falls within the waiver. *Id.* at 12. Second, it argued that the damages that Metropolitan incurred in the bluff collapse would be "covered" by Metropolitan's CGL policy. *Id.* Specifically, in connection with this second argument, WEPCO included the following in its opening brief:

> Second, WEPCO is an Additional Insured under the CGL and excess policies. This is meaningful because WEPCO, as an Additional Insured, is an entity "covered" by Metropolitan's CGL policy against any claims for negligence causing property damage on the project. If Charter Oak is correct that WEPCO was negligent and could bear liability for the bluff collapse (which is denied), WEPCO's potential liability would fall within the CGL policy and therefore be in the category of "damages covered by any of the insurance required above." This is no technicality; the entire purpose of requiring the insurance, adding the company as an additional insured, and including a subrogation waiver is to place the *sole* risk of loss on a third party commercial entity whose purpose is to underwrite and cover such risks—the insurance company. Charter Oak underwrote the risk, and it paid out under the terms of its policy. It has no subrogation claim against WEPCO.

*Id.* at 12–13. WEPCO then, in its third argument, argued that if there were any ambiguity as to whether the subrogation waiver applied to bar Charter Oak's claim, the court should construe that ambiguity in WEPCO's favor. *Id.* at 13.

As WEPCO anticipated, Charter Oak, in its response brief, argued that the subrogation waiver did not apply because Charter Oak paid Metropolitan under a property policy. Br. in Opp. at 10–11, ECF No. 21. However, Charter Oak did not respond to the three specific arguments that WEPCO made in its opening brief as to

why Charter Oak's claims were within the scope of the subrogation waiver even though Charter Oak made payments under a property policy. *See id.* Charter Oak merely cited the relevant contract language and asserted in conclusory fashion that it did not apply to payments made under a property policy. Indeed, Charter Oak's entire argument consisted of four sentences, which I can reproduce here:

> While it is true that the Contract contains a Waiver of Subrogation, it specifically states that the waiver only applies to the extent damages are paid under a policy of insurance required to be purchased under the Contract. The policies required to be purchased under the WEPCO/Metropolitan Contract are: CGL, automobile, professional liability, environmental impairment and aircraft liability. Nowhere in the WEPCO/Metropolitan Contract is there a requirement that Metropolitan purchase *property* insurance. Thus, the Waiver of Subrogation clause does not apply to the current payments which were made under a policy of property insurance and the current action should be allowed to proceed.

*Id.* at 11 (quotation of subrogation waiver and citations to record omitted).

In deciding WEPCO's original motion to dismiss, I accepted WEPCO's argument that the subrogation waiver applies whenever Metropolitan's damages would be "covered" by one of the policies that the contract required Metropolitan to procure, even if the insurer did not actually make payments under one of those policies. *See* Dec. and Order at 4–5. I then noted that WEPCO had argued in its opening brief that the damages to Metropolitan's heavy equipment would have been within the scope of the CGL policy that the contract required Metropolitan to procure, and which named WEPCO as an additional insured. *Id.* I then assumed that, because Charter Oak did not in its response brief dispute that the damages would have been covered by the CGL policy, Charter Oak agreed with WEPCO on this point. *Id.* I thus found that Charter Oak's claims against WEPCO were within the scope of the subrogation waiver and dismissed them.

In its motion for reconsideration of my decision, Charter Oak does not argue that my interpretation of the subrogation waiver was erroneous. That is, Charter Oak does not dispute that the subrogation waiver would bar its claims against WEPCO if Metropolitan's damages would have been covered by Metropolitan's CGL policy or another policy identified in the contract, even if Charter Oak paid out under a property policy.[3] Instead, Charter Oak argues that I should have rejected WEPCO's argument that Metropolitan's damages would have been covered by the CGL policy, even though Charter Oak did not respond to this argument in its brief in opposition to WEPCO's original motion to dismiss. In connection with this argument, Charter Oak first points out that, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is limited to considering the allegations of the complaint and any attached exhibits. It then notes that the allegations of the amended complaint and the attached exhibits did not establish that Metropolitan's damages would have been covered by the CGL policy that the contract required Metropolitan to procure. Thus, argues Charter Oak, it was improper for me to find, in the course of ruling on a motion to dismiss under Rule 12(b)(6), that Metropolitan's damages would have been covered by the CGL policy.

Charter Oak's argument that the complaint and attached exhibits do not establish that Metropolitan's damages would have been covered by a CGL policy is an excellent one: nothing in the complaint or attached exhibits suggests that Metropolitan's CGL policy would have covered Metropolitan for damage to its equipment caused by WEPCO's negligence. Indeed, now that I think about it, it seems quite unlikely that

_____

[3] To be sure, Charter Oak states in its motion for reconsideration that it "disagrees" with my interpretation of the subrogation waiver, but it does not ask me to reconsider my interpretation or explain why it thinks my interpretation is wrong. Br. at 4 n.2, ECF No. 36.

Metropolitan's CGL policy would have covered Metropolitan for damage to its own equipment. After all, a liability policy covers the insured's liability to a third party and does not pay out when the conduct of a third party damages the insured's own property. Although WEPCO is an additional insured under the policy, I doubt that the terms of the policy provide that WEPCO is covered for its own negligence that results in damage to Metropolitan. Rather, the policy likely provides that WEPCO is covered for vicarious liability to a third party based on acts or omissions committed by Metropolitan. In any event, I need not decide this coverage issue now. The important point is that the amended complaint and the attached exhibits do not show that the CGL policy required by the contract would have covered the loss that Metropolitan incurred when the bluff collapsed.

Although Charter Oak's argument about what a court may consider in the context of a Rule 12(b)(6) motion is an excellent one, the fact remains that Charter Oak did not make this argument in response to WEPCO's motion to dismiss. Thus, Charter Oak could be deemed to have waived the argument. *See United Central Bank v. KMWC 845, LLC*, 800 F.3d 307, 310 (7th Cir. 2015) (arguments raised for the first time in a motion for reconsideration are waived). Charter Oak, in its motion for reconsideration, contends that its failure to make this argument should be excused because it had no obligation to respond to WEPCO's argument that Metropolitan's damages were covered by the CGL policy. Charter Oak claims that it had no obligation to respond to this argument because the argument was "wholly conclusory, perfunctory, unsubstantiated and undeveloped."[4] However, this is wrong. It is true that WEPCO's argument could be

_____

[4] Charter Oak repeats the phrase that WEPCO's argument was "wholly conclusory, perfunctory, unsubstantiated and undeveloped" at least eight times in its briefs. I am

described as undeveloped because it did not cite to parts of the amended complaint and attached exhibits showing that the CGL policy would have covered the damages. But this does not mean that Charter Oak was free to ignore the argument altogether in its response brief. At the very least, Charter Oak should have argued that WEPCO waived the argument by failing to fully develop it. *See Morgan v. City of Chicago*, 822 F.3d 317, 336 n.50 (7th Cir. 2016) (noting that a party can waive a waiver argument by failing to raise it). Better still, Charter Oak should have just noted that the CGL policy was not attached to the complaint and that therefore the court could not conclude on a motion to dismiss that the policy covered the damages. But Charter Oak did not do either of these things, and therefore I assumed that Charter Oak agreed with WEPCO that the CGL policy covered the damages.

For these reasons, I could conclude that Charter Oak waived the argument that the complaint and attached exhibits do not show that the CGL policy covered Metropolitan's damages. However, I will not do so. First, whether or not I enforce Charter Oak's waiver and uphold the dismissal of the claims against WEPCO, the case will still proceed against the second defendant, URS.[5] Because the court will have to deal with the merits of Charter Oak's negligence claim even if it enforces the waiver, enforcing the waiver will not significantly conserve judicial resources. Second, enforcing the waiver and dismissing Charter Oak's claims against WEPCO strikes me as an overly harsh sanction for Charter Oak's failure to raise an argument in its response

---

tempted to hold oral argument on Charter Oak's motion for reconsideration just so I can hear its lawyer repeat this phrase a few more times, preferably while doing his or her best Jackie Chiles impersonation. *See* https://www.youtube.com/watch?v=jpcEietIoxk.

[5] Although URS has filed its own motion to dismiss, I will deny that motion for reasons explained later in this opinion.

brief, especially where, as here, it is clear that the argument would have been meritorious. Thus, I will reconsider my dismissal of Charter Oak's claims against WEPCO. Moreover, for the reasons explained above, I conclude that the complaint and attached exhibits do not establish that Metropolitan's damages were covered by the CGL policy that the contract required Metropolitan to procure. Thus, I vacate my prior rationale for dismissing WEPCO from this case.[6]

## B. WEPCO's Other Arguments, and URS's Motion to Dismiss

Having decided to reconsider and vacate my prior rationale for dismissing WEPCO, I must now address the other arguments that WEPCO makes in support of its motion to dismiss. I also address URS's motion to dismiss.

### 1. Arguments based on "Contractor's Risk" provision

WEPCO contends that Charter Oak's claims must be dismissed because they are barred by a section of the contract entitled "Contractor's Risk." Contract at 11–12. This section provides, in relevant part, as follows:

> The Company does not guarantee the accuracy of plats or borings, nor the position of pipes or other underground objects. **The Contractor shall take all risks and responsibilities of the fitness or sufficiency of any procedures, methods, ways, works or appliances which the Company may have adopted prior to the execution hereof** preliminarily to or in aid of the work and the Contractor shall inform itself, by examination, of the conditions of the site of the work.
>
> . . . .
>
> **The Contractor shall take all risks and responsibilities on account of quicksands, springs, character and position of bedrock and the like,**

---

[6] I also note that WEPCO is not entitled to dismissal on the ground that property insurance is "equivalent" to a CGL policy. Again, this cannot be determined from the complaint and attached exhibits. Moreover, property insurance is an entirely different form of insurance than liability insurance, and thus I doubt that it could reasonably be thought to be equivalent to CGL insurance.

**and floods, frost, freezing, fire, all action of the elements, casualties and other difficulties encountered, and it shall have no claim against the Company for delays or extra expense incurred thereby occasioned.**

**The Company at no time assumes risk of loss for any personal property (such as, but not limited to, owned equipment, leased/rented/borrowed equipment, tools, employee tools and clothing) of the Contractor, its subcontractors, or their employees whether at the Company's site or not.**

*Id.* (emphasis added).

WEPCO contends that the emphasized parts in the excerpt above bar Charter Oak's claims against it. This presents a question of contract interpretation governed by Wisconsin law. Under Wisconsin law, a court's primary goal in contract interpretation is to give effect to the parties' intent, as expressed in the language of the contract. *Maryland Arms Ltd. P'ship v. Connell*, 326 Wis. 2d 300, 311 (2010). The court must "interpret the language consistent with what a reasonable person would understand the words to mean under the circumstances." *Id.* If the contract's language is unambiguous, the court may not consider extrinsic evidence. *Town Bank v. City Real Estate Dev., LLC*, 330 Wis. 2d 340, 356 (2010). Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence. *Id.* Whether the contract is ambiguous is a question of law for the court. *MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust*, 362 Wis. 2d 258, 273 (2015).

In the present case, WEPCO can succeed on its motion to dismiss only if the cited portions of the contract unambiguously bar Charter Oak's claims. If they are ambiguous, then further proceedings will be needed to resolve the ambiguity, including

possibly a trial.[7]   And I conclude, for the reasons explained below, that the only provisions of the "Contractor's Risk" section that could reasonably be construed to bar Charter Oak's claims are ambiguous.

The first provision on which WEPCO relies states that Metropolitan "shall take all risks and responsibilities of the fitness or sufficiency of any procedures, methods, ways, works, or appliances which the Company may have adopted prior to the execution hereof."  This provision reads like it was drafted by a lawyer who practiced law in the late 1800s, and I am not sure what it is supposed to mean.  My best guess is that it means WEPCO is not liable if Metropolitan decides to adopt any dredging practices that WEPCO may have employed prior to hiring Metropolitan to compete the work.  In any event, the provision does not suggest that WEPCO would not be liable for its own negligence in causing the bluff above the dredging project to collapse.  So this provision does not bar Charter Oak's claims.

The second provision on which WEPCO relies states that Metropolitan will "take all risks and responsibilities on account of quicksands, springs, character and position of the bedrock and the like, and floods, frost, freezing, fire, all action of the elements, casualties and other difficulties encountered, and it shall have no claim against the Company for delays or extra expense thereby occasioned."  WEPCO contends that this provision means that Metropolitan is "assuming the risk of any harm caused by the natural environment surrounding the project site, including the adjoining bluff."  Br. in Opp. at 17, ECF No. 40.  While this much may be true, it does not follow that the

_____

[7] Charter Oak contends that any ambiguity in the contract must be construed against WEPCO as the drafter, but for purposes of WEPCO's motion to dismiss I need not decide whether this contention is correct.

provision means that Metropolitan was agreeing to hold WEPCO (or anyone else) harmless for its acts or omissions that may have caused the harm to the natural environment that, in turn, caused harm to Metropolitan. This is perhaps best explained by way of an example.

Assume for purposes of this example that the adjoining bluff was located on WEPCO's neighbor's property, and that it was the neighbor's negligence that caused the bluff to collapse. Also assume that the collapse of the bluff qualifies as an event described in the provision under review—perhaps it was an event caused by the "character and position of bedrock and the like." Finally, assume that the collapse of the bluff delayed the dredging project, made it more expensive for Metropolitan to complete, and also damaged Metropolitan's heavy equipment that was on site. The provision under review would require Metropolitan to finish the dredging project even though doing so would now be more expensive than Metropolitan had anticipated when it signed the contract. Further, the provision would prevent Metropolitan from billing WEPCO for any extra expenses it incurred in finishing the project. However, the provision would not bar Metropolitan from suing WEPCO's neighbor for its negligence in causing the bluff to collapse. This is because nothing in the provision says that Metropolitan cannot sue the party that caused the event that interfered with the project. It just says that Metropolitan is responsible for finishing the project and cannot bill WEPCO for the extra work. For similar reasons, it is at least reasonable to interpret the provision as allowing Metropolitan to sue WEPCO for its own negligence in causing the bluff to collapse. Although Metropolitan would still be responsible for finishing the dredging project at the originally agreed upon price, Metropolitan could sue WEPCO for

its negligence in causing the damage to its heavy equipment.   Again, nothing in the provision states that Metropolitan was agreeing to hold WEPCO or any other party harmless for its own negligence.   Metropolitan was only agreeing to finish the project at the contract price even if one of the listed events occurred.

The third provision of the "Contractor's Risk" section at issue states that WEPCO "at no time assumes risk of loss for any personal property . . . of the Contractor . . . whether at [WEPCO's] site or not."   This provision comes close to barring Charter Oak's claim for damage to Metropolitan's personal property.   However, I still think there is a reasonable interpretation of this provision under which WEPCO is liable for its own negligence in causing damage to Metropolitan's property, such that the provision is ambiguous.   The ambiguity lies in the phrase "assumes the risk."   What, exactly, is this supposed to mean?   On the one hand, it could mean that Metropolitan is agreeing to hold WEPCO harmless for any damage that occurs to its personal property at any time, even if the damage was caused by WEPCO's negligence.   But there is another reasonable interpretation.   Even before Metropolitan and WEPCO entered into the contract, WEPCO had a duty to exercise ordinary care to prevent injury to Metropolitan and all other persons. *See, e.g., Brandenburg v. Briarwood Forestry Servs., LLC*, 354 Wis. 2d 413, 418 (2014) (noting that, under Wisconsin law, every person is subject to a duty to exercise ordinary care in all of his or her activities).   Thus, in a sense, WEPCO could never "assume" any risk of loss relating to its own negligence—WEPCO was already exposed to that risk, even before the parties entered into the contract.   All WEPCO could do was *relieve itself* that risk, which is arguably different than not assuming the risk.   Under this interpretation of the provision, it means only that WEPCO

was making clear that it was not assuming any responsibility for Metropolitan's personal property beyond the responsibility it already had under tort law. In other words, the provision makes clear that WEPCO was not agreeing to act as an insurer of Metropolitan's equipment. Thus, for example, if Metropolitan damaged a piece of equipment while performing dredging services, the provision would make clear that Metropolitan was not entitled to reimbursement from WEPCO. But the provision arguably does not also mean that if WEPCO's own negligence caused damage to a piece of Metropolitan's equipment, WEPCO would be relieved of its common-law responsibility to pay damages. For these reasons, I find that the provision is ambiguous and that I cannot use it to dismiss Charter Oak's claims.

### 2. Additional argument based on subrogation waiver

In its brief in opposition to Charter Oak's motion for reconsideration, WEPCO for the first time argues that the subrogation waiver is not limited to waiving subrogation rights when the loss would be covered by one of the insurance policies required by the contract. Instead, argues WEPCO, the provision means that Metropolitan generally waived "the right of subrogation" as to all of its insurers, such that none of Metropolitan's insurers could ever exercise a right of subrogation against WEPCO. URS, in its motion to dismiss, piggybacks on this argument and expands it: according to URS, the subrogation waiver prevents any of Metropolitan's insurers from exercising rights of subrogation against *anyone*, not just WEPCO. Thus, argues URS, Charter Oak cannot sue it for negligence.

WEPCO's and URS's argument is based on the placement of a comma after the word "subrogation":

> [Metropolitan] waives the right of subrogation, and waives all rights against [WEPCO] and its agents, officers, directors and employees for recovery of damages to the extent these damages are covered by any of the insurance required above.

Contract at 3. The argument is that the use of this comma, and the lack of a second comma after "for recovery of damages," means that the phrase "to the extent these damages are covered by any of the insurance required above" does not apply to the waiver of the right of subrogation. Under this argument, the subrogation waiver could be understood as two independent sentences. The first sentence would be "[Metropolitan] waives the right of subrogation." The second sentence would be "[Metropolitan] waives all rights against [WEPCO] and its agents, officers, directors and employees for recovery of damages to the extent these damages are covered by any of the insurance required above." WEPCO and URS contend that the first sentence should be understood as an unqualified waiver of all of Metropolitan's insurers' subrogation rights, while the second sentence means that Metropolitan cannot bring a claim against WEPCO if its claim would be covered by the insurance required by the contract.

I am not convinced that WEPCO's and URS's interpretation of this provision is reasonable. For one thing, interpreting the first part of the subrogation waiver as being broader than the second part leads to an unreasonable result: under the second part, Metropolitan would be permitted to sue WEPCO for damages that are *not* covered by the forms of insurance required by the contract, but if Metropolitan had other forms of insurance that covered it for those damages, the first part of the provision would bar its insurers from exercising their rights of subrogation. Why would the parties have intended to permit Metropolitan to sue WEPCO for damages not covered by the

required forms of insurance, but prohibit Metropolitan's insurers from doing so? Since this is likely not the result that the parties intended, I doubt that WEPCO's and URS's interpretation of the subrogation waiver is reasonable. *See Gottsacker v. Monnier*, 281 Wis. 2d 361, 375 (2005) (stating that court "should adopt a construction that will render the contract a rational business instrument so far as reasonably practicable").

Another problem is that I doubt that any reasonable business entity would agree to a clause in a contract that says nothing more than that someone "waives the right of subrogation." This phrase, standing alone, is vague, and thus it does not clearly delineate the scope of the waiver. Just about any reasonable business entity would expect to have the scope of the waiver further defined, and that's what the phrase "to the extent these damages are covered by any of the insurance required above" appears to do. It is true that this meaning would be clearer if the parties had included a second comma after "recovery of damages," but the omission of the comma does not, by itself, suggest that the parties understood the phrase "[Metropolitan] waived the right of subrogation" to be a freestanding provision of the contract.

URS contends that the subrogation waiver must be freestanding and not limited to the forms of insurance required by the contract because the required forms are worker's compensation and liability insurance, under which an insurer typically does not have a right of subrogation. Thus, argues URS, the waiver must have been intended to apply to other forms of insurance, such as the property policy at issue in this case, under which insurers have subrogation rights. However, while it may be true that under the required policies insurers do not have subrogation rights, it would not be unreasonable to suppose that WEPCO wanted to take a belt-and-suspenders approach,

under which it negotiated for the waiver of subrogation rights under the required policies just in case some circumstance arose in which an insurer that issued one of the required policies attempted to assert a subrogation right against WEPCO. Because of this, and in light of the other reasons I have given in favor of a narrower interpretation of the subrogation waiver, I conclude that, at the very least, the waiver does not unambiguously waive the right of subrogation with respect to damages that are not covered by the forms of insurance required by the contract.

### 3. WEPCO's argument for resolving ambiguities in its favor

Finally, WEPCO argues that if there is any ambiguity in the contract about whether the parties intended to waive the subrogation rights of Metropolitan's property insurer, that ambiguity should be resolved in its favor. WEPCO contends that the contract's failure to specify that Metropolitan was required to have property insurance was a "ministerial oversight," and that therefore I must construe the contract to preclude Metropolitan's property insurer from having a right of subrogation against WEPCO. Br. in Opp. at 21. However, the complaint and attached exhibits—which are the only parts of the record that I may consider on a motion to dismiss under Rule 12(b)(6)—do not suggest that a ministerial oversight led to the omission of property insurance from the list of required insurance. The forms of insurance listed in the contract are all forms of liability insurance that insure Metropolitan against claims made by third parties. This suggests that WEPCO wanted to make sure that Metropolitan had adequate liability insurance that would pay damages to WEPCO or a third party in the event that Metropolitan caused an accident while completing the dredging project. Moreover, WEPCO's demanding to be included as an additional insured suggests that it was

concerned about a third party's trying to hold it vicariously liable for Metropolitan's conduct. It would be consistent with this intent for WEPCO to have excluded property insurance from the list of required insurance, as Metropolitan's property insurance would not have protected WEPCO from claims made by an injured third party or provided coverage to WEPCO in the event that Metropolitan damaged WEPCO's property. Thus, the extant provisions of the contract do not suggest that the parties intended to require Metropolitan to procure property insurance but failed to do so because of an oversight.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Charter Oak's motion for reconsideration is **GRANTED**. My dismissal of Charter Oak's claims against WEPCO is **VACATED**.

**IT IS FURTHER ORDERED** that URS's second motion to dismiss is **DENIED**.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2017.


/s Lynn Adelman
LYNN ADELMAN
District Judge